Alfredo Martinez SANCHEZ,
Appellant,

v.

The STATE of Texas, Appellee.

No. 06–02–00167–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 12, 2003.

Decided Nov. 20, 2003.

Ebb B. Mobley, Longview, for appellant.

William M. Jennings, Dist. Atty., Renee Gartland, Asst. Dist. Atty., Longview, for state.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Alfredo Sanchez[1] (hereinafter defendant) appeals his conviction by jury trial of capital murder for shooting and killing his two cousins, Jorge Sanchez and Jose Luis Sanchez. The State waived the death penalty, and the trial court sentenced defendant to life imprisonment. Defendant raises four issues on appeal, arguing the trial court erred in 1) conducting a pretrial hearing in the absence of the defendant, 2) failing to appoint a bi-lingual interpreter in addition to the court's interpreter to assist defendant's trial counsel, 3) giving the jury an instruction concerning illegal possession of a handgun without the qualification that a person may legally possess a handgun while traveling, and 4) refusing to allow the defendant to call the court interpreter as a witness to possible visual coaching of one of the State's witnesses. We affirm the judgment of the trial court.

On the evening of December 24, 2000, members of the extended Sanchez family gathered at 441 South Fredonia in Longview, Texas, for a Christmas Eve dinner. Defendant picked up Emma Sanchez de la Paz (hereinafter Emma Sanchez) at her house in Longview and brought her to the residence on South Fredonia. Defendant had intended to go to his Uncle Javier's house in Liberty City later that night. Defendant and Emma Sanchez went into the house and greeted the family members gathered therein. After greeting the family members amicably, defendant left the residence briefly.

When defendant returned, he had a gun in his hand. At this point, a verbal confrontation may have developed. Several witnesses testified Jose Luis Sanchez told him not to bring the pistol into the house, but no physical confrontation occurred. Defendant testified that his cousins cursed him when he brought the gun into the house and that Jorge Sanchez pushed him out the door. Jorge Sanchez and defen-

---

1. This is the defendant's name as alleged in the indictment and the charge. On the judg- ment and the reporter's record, the defendant is named as Alfredo Martinez Sanchez.

dant went outside together. After hearing gunshots from the yard, several family members peered outside and saw Jorge Sanchez lying on the ground. Defendant testified he was shot at before he shot Jorge Sanchez. After he saw Jorge Sanchez lying in the yard, Marco Antonio Sanchez Martinez (hereinafter Marco Sanchez) retrieved a gun from the inside of the house. Marco Sanchez and Jose Luis Sanchez opened the door and stepped outside. Marco Sanchez testified defendant shot at them, and he returned fire. At various points during the exchange of gunfire, Jorge Sanchez and Jose Luis Sanchez were killed, and defendant was wounded in the stomach and the foot.

Police officers, who had been at another residence in the neighborhood, heard the shots and quickly arrived at the scene. The officers discovered the defendant outside near his truck with a pistol and a shotgun. No gun was found near Jorge Sanchez or Jose Luis Sanchez. Another pistol was discovered inside the house.

### Right to be Present at Pretrial Hearing

█ In his first point of error, defendant alleges the trial court violated both his constitutional and statutory rights to be present at a pretrial hearing. The pretrial hearing in question occurred immediately before voir dire. Defendant had not yet arrived in the courtroom. The hearing was held to determine whether the court would appoint an interpreter, other than the witness interpreter, to aid defendant's appointed counsel during trial. The State argues that the hearing did not bear a "reasonably substantial relationship" to defendant's opportunity to defend himself and that he was "voluntarily absent" from the hearing. In the alternative, the State argues that any error was harmless error.

█ Defendant argues he has a statutory right to be present.[2] Article 28.01 of the Texas Code of Criminal Procedure requires an accused to be present during any "pre-trial proceeding." TEX.CODE CRIM. PROC. ANN. art. 28.01 (Vernon 1989). Whether a hearing constitutes a proceeding under Article 28.01 has been considered in several decisions by the Texas Court of Criminal Appeals.[3] *Adanandus* interpreted its earlier decision to require a proceeding to contain "a written order indicating the existence of some type of proceeding leading to the court's conclusion." *Adanandus v. State*, 866 S.W.2d 210, 218 (Tex.Crim.App.1993). These cases indi-

---

**2.** We note defendant argues he has a statutory right to be present under Article 33.03, which provides that the defendant must be personally present at trial. *See* TEX.CODE CRIM. PROC. ANN. art. 33.03 (Vernon 1989). Because we believe that Article 28.01 is more applicable for a pretrial hearing, we have analyzed the defendant's statutory argument under Article 28.01. TEX.CODE CRIM. PROC. ANN. art. 28.01 (Vernon 1989).

**3.** *See Lawton v. State*, 913 S.W.2d 542, 549–50 (Tex.Crim.App.1995), *overruled on other grounds, Mosley v. State*, 983 S.W.2d 249 (Tex. Crim.App.1998) (meeting concerning recusal of juror who had received a telephone call from the defendant which was nonadversarial and resulted in an agreed dismissal of the juror was not a proceeding); *Adanandus v.*

*State*, 866 S.W.2d 210, 218–19 (Tex.Crim.App. 1993) (pre-voir dire in-chambers meeting which was transcribed by the court reporter and indicated existence of some type of proceeding leading to conclusions by the court held to be a proceeding); *Malcom v. State*, 628 S.W.2d 790, 792 (Tex.Crim.App.1982) (pro se motion to dismiss appointed counsel not a proceeding where neither party was present, there was no written order, no evidence was received, and no recitation of "came on to be heard"); *Riggall v. State*, 590 S.W.2d 460, 461 (Tex.Crim.App.1979) (ex parte hearing on motion to dismiss on statutory speedy trial grounds found to be a proceeding where neither defendant nor his counsel was present).

cate that whether a pretrial hearing is a proceeding requires us to consider whether the proceeding is adversarial in nature, recorded or resulted in a written order, included evidence or argument, and resulted in a conclusion by the court. The hearing at issue concerned whether the court would appoint a second interpreter to aid defense counsel in investigation of the events on which the defendant was charged and to aid counsel in communicating with his client. The hearing was adversarial, transcribed by the court reporter, and led to a conclusion by the court. Further, Article 28.01 includes appointment of an interpreter as a matter on which a pretrial hearing can be held. *See* TEX.CODE CRIM. PROC. ANN. art. 28.01 (Vernon 1989). We conclude the hearing was a pretrial proceeding and the defendant's presence was required under Article 28.01. Therefore, the trial court did err in conducting the proceeding without the defendant's presence.

 The next step in the analysis is whether the error resulted in harmless error. In our review of nonconstitutional error, we are to disregard errors, defects, irregularities, or variances that do not affect substantial rights of the accused. TEX.R.APP. P. 44.2(b). A "substantial right" is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," we must conclude the error was not harmful and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Since the only issue at the hearing concerned the appointment of a second interpreter and the defense counsel, to his credit, paid for a second interpreter at his own expense, the error clearly did not have any more than a slight effect. Although the trial court erred in conducting the proceeding outside the presence of the defendant, the error was harmless.

 In addition to the right to be present under Article 28.01, defendant has a constitutional right to be present. The Confrontation Clause of the Sixth Amendment creates a constitutional right to be physically present at trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The Texas Court of Criminal Appeals has adopted the "reasonably substantial relationship" test in order to satisfy Fourteenth Amendment due process and Sixth Amendment concerns. *Routier v. State*, 112 S.W.3d 554, 576 (Tex. Crim.App.2003); *Adanandus*, 866 S.W.2d at 219. The "reasonably substantial relationship" test focuses on the effect of the error on the advancement of the defendant's defense. *Adanandus*, 866 S.W.2d at 219. Under the "reasonably substantial relationship" test, the defendant's presence must bear a reasonably substantial relationship to the opportunity to defend. *Id.* If the defendant's presence would not have furthered the defense, his or her presence does not bear a reasonably substantial relationship to the opportunity to defend. *Id.* Similar to *Adanandus*, we cannot "envision how [the defendant's] presence could have furthered his defense," because there is "no evidence that appellant had any information, not available to the attorneys or the court, regarding any of the matters discussed at the meeting." *Id.* at 220. The trial court had previously made the decision that an interpreter was necessary. The trial court had previously appointed an interpreter, and the only issue raised in this hearing was whether the defendant was entitled to a separate interpreter during the trial to aid his attorney. Because the defendant's presence could

not have furthered his defense, his presence did not bear a reasonably substantial relationship to his opportunity to defend. Further, since defense counsel paid a second interpreter out of his own funds and was eventually reimbursed by the court, any error would be harmless beyond a reasonable doubt.

Although defendant's absence violated Article 28.10, the error did not have any more than a slight effect. His absence did not constitute a violation of defendant's constitutional rights under the reasonably substantial relationship test. Even if there was a constitutional error, it was clearly harmless error because we conclude, beyond a reasonable doubt, that it did not affect the outcome of the trial.

### Failure to Appoint a Second Bi–Lingual Interpreter

In his second point of error, defendant argues that the failure to appoint an interpreter to aid his attorney, other than the court's interpreter, violates the Confrontation Clause and Effective Assistance of Counsel Clause of the Sixth Amendment. The State contends the right to an interpreter is derived from the Confrontation Clause, which is satisfied by the appointment of a single interpreter. The State argues that Texas statutes only require the appointment of a single interpreter at the discretion of the trial court.

The need for interpreters arose because the defendant and several witnesses could not speak English. Since the appointed defense counsel could not speak Spanish, and no Spanish-speaking investigator was available, an interpreter was needed to aid the defense investigator in communicating with witnesses and the defense counsel in communicating with his client. Terri Cotton, a community supervision officer with Gregg County, had originally been appointed to act as an interpreter. On March 12, 2001, defendant requested the appointment of Gilbert Urbina, as an interpreter, to aid the defense investigator with his investigation of the alleged crime. Defendant argued Cotton had a conflict of interest and might have availability difficulties. The trial court held that no conflict of interest existed, but appointed Urbina as an interpreter to aid the defense in their investigation based "on other grounds."

On August 12, 2001, both Cotton and Urbina appeared at trial. The defense counsel requested that Urbina be allowed to continue as the interpreter to assist the defense in interviewing witnesses and that Cotton be allowed to serve as the court interpreter. The trial court originally stated he was not willing to pay for two interpreters and appointed Cotton to act as the interpreter for the court. At this point, the defense counsel agreed to pay for Urbina's services at his own expense. During the trial, though, the trial court stated he was willing to allow the submission of a bill for Urbina's services and eventually reimbursed Urbina for 90.5 hours of service.

Article 38.30 of the Texas Code of Criminal Procedure requires an interpreter to be appointed if it is determined the defendant or a witness cannot "understand and speak the English language." TEX. CODE CRIM. PROC. ANN. art. 38.30 (Vernon Supp.2004). The Houston Court of Appeals has held that Article 38.30 does not require an appointment of an interpreter to aid the defense counsel in addition to the court interpreter. *Nguyen v. State*, 774 S.W.2d 348, 349 (Tex.App.-Houston [14th Dist.] 1989, pet. ref'd). In *Nguyen*, the Houston Court of Appeals held that Article 38.30 did not require appointment of an interpreter to act as an intermediary between the defendant and the defense counsel. *Id.* at 350. The court based its

decision on a conclusion that the plain language of the statute only required one interpreter to be appointed and the statute satisfied the requirements of the Confrontation Clause. *Id.* Justice Ellis, in his concurring opinion, argues that the language of the statute does require appointment of an interpreter to aid the defense in certain circumstances. *Id.* at 351. Justice Ellis further suggested that the defendant's rights of due process and effective assistance of counsel, under the Fifth and Sixth Amendments to the United States Constitution and Article I, Sections 10 and 19 of the Texas Constitution, may require appointment of an interpreter to assist his defense counsel. *Id.*

Some Texas courts have held that the only basis for providing the accused with an interpreter is the Confrontation Clause of the United States Constitution and Texas Constitution. *See Vasquez v. State,* 819 S.W.2d 932, 937 (Tex.App.-Corpus Christi 1991, pet. ref'd); *Montoya v. State,* 811 S.W.2d 671, 673 (Tex.App.-Corpus Christi 1991, no pet.); *Nguyen,* 774 S.W.2d at 350; *Vargas v. State,* 627 S.W.2d 785, 787 (Tex.App.-San Antonio 1982, no pet.). This Court has recognized that the right to an interpreter is conferred by the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *Garnica v. State,* 53 S.W.3d 457, 458 (Tex.

App.-Texarkana 2001, no pet.). While this Court has not recognized the Assistance of Counsel Clause as a basis for the right to an interpreter, the Texas Court of Criminal Appeals has suggested such a basis. In *Baltierra v. State,* the Texas Court of Criminal Appeals noted a basic aspect of effective assistance of counsel, the ability to communicate, was provided when counsel fluent in Spanish was appointed for a Spanish-speaking defendant. *Baltierra v. State,* 586 S.W.2d 553, 559 n. 11 (Tex.Crim. App.1979). Other states have recognized that an interpreter may be required in order to be effectively represented by counsel.[4] An attorney must be able to communicate with his or her client in order to effectively represent the client. Therefore, we conclude the requirement of effective assistance of counsel forms a basis for the requirement of an interpreter.

Some courts have indicated that the Sixth Amendment may require appointment of a second interpreter to aid the defense.[5] However, when the defendant can confer effectively with counsel in some manner throughout the proceedings and can understand the proceedings, courts have concluded a separate interpreter for the defense is not necessary.[6]

In general, the appointment of an interpreter is reviewed for an abuse of discretion. *Bustillos v. State,* 464 S.W.2d

---

**4.** *State v. Natividad,* 111 Ariz. 191, 526 P.2d 730, 733 (Ariz.1974); *Chao v. State,* 604 A.2d 1351, 1362 (Del.1992), *superseded by statute on other grounds, Lawrie v. State,* 643 A.2d 1336 (Del.1994); *Martinez Chavez v. State,* 534 N.E.2d 731, 737 (Ind.1989); *In re Murga,* 1981 OK 36, 631 P.2d 735, 736 (1981); *Commonwealth v. Pana,* 469 Pa. 43, 364 A.2d 895, 898 (1976).

**5.** *See United States ex rel. Navarro v. Johnson,* 365 F.Supp. 676, 680–83 (E.D.Pa.1973); *People v. Aguilar,* 35 Cal.3d 785, 200 Cal.Rptr. 908, 677 P.2d 1198, 1203 (1984); *People v. Avila,* 797 P.2d 804, 806 (Colo.Ct.App.1990);

*State v. Santiago,* 206 Wis.2d 3, 556 N.W.2d 687, 694 (1996); *see also State v. Dam,* 111 Or.App. 15, 825 P.2d 286, 288 (1992).

**6.** *See United States v. Bennett,* 848 F.2d 1134, 1141 (11th Cir.1988); *United States v. Lim,* 794 F.2d 469, 471 (9th Cir.1986); *Castellon v. Whitley,* 739 F.Supp. 526, 527–28 (D.Nev. 1990); *Navarro,* 365 F.Supp. 676; *Avila,* 797 P.2d at 806; *People v. Tomas,* 136 Ill.App.3d 1054, 91 Ill.Dec. 782, 484 N.E.2d 341, 343 (1985); *State v. Gonzales–Morales,* 138 Wash.2d 374, 979 P.2d 826, 832 (1999).

118, 126 (Tex.Crim.App.1971); *Minor v. State*, 659 S.W.2d 161, 164 (Tex.App.-Fort Worth 1983, no pet.). However, in this case, there is no need to determine if the circumstances required appointment of a separate interpreter in addition to the court's interpreter. Because the defense counsel retained a second interpreter at his own expense and was eventually reimbursed by the trial court, any error, if any, is clearly harmless beyond a reasonable doubt. *See* TEX.R.APP. P. 44.2(b).

## Failure to Instruct Jury Concerning Traveling Exception

 Defendant contends, in his third point of error, the trial court erred in charging the jury that "[o]ur law provides that it is unlawful for a person to intentionally, knowingly or recklessly carry a handgun on or about his person" without the qualification that a person may carry a handgun while traveling. Defendant argues he presented sufficient evidence to raise the qualification and it should have been presented to the jury as a fact issue. Defendant argues that the alleged error constitutes reversible error under *Almanza*. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g). While the State argues the error was not preserved for appeal, we believe the issue was preserved.

The jury was charged with a limitation to self-defense under Section 9.31(b)(5) of the Texas Penal Code, which limits the right of self-defense if a person seeks an explanation with the other person while carrying a handgun in violation of Section 46.02 of the Texas Penal Code. *See* TEX. PEN.CODE ANN. § 9.31(b)(5) (Vernon 2003). Section 46.02 of the Texas Penal Code provides that a person commits the offense of unlawfully carrying a weapon if "he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club." TEX. PEN.CODE ANN. § 46.02 (Vernon 2003). However, Section 46.15 provides that Section 46.02 does not apply if a person is traveling. TEX. PEN. CODE ANN. § 46.15(b)(3) (Vernon Supp. 2004). Defendant argues he was traveling to his Uncle Javier's house later that evening to shoot the gun into the air to celebrate Christmas Eve. While such a practice may not be wise or legal, if defendant was traveling, he would not have been in illegal possession of the handgun and subject to the self-defense limitation.

The Texas Legislature has never adopted a definition for what constitutes traveling under Chapter 46 of the Texas Penal Code. *Matocha v. State*, 890 S.W.2d 144, 146–47 (Tex.App.-Texarkana 1994, pet. ref'd) (op. on reh'g). The State contends this Court adopted, in *Matocha*, the definition of a "traveler" from Corpus Juris Secundum as "one who 'passes beyond the circle of his friends and immediate acquaintances, and is no longer within the routine of his daily business, or his ordinary habits, duties, or pleasures.' " *See id.* at 146. However, in *Matocha*, this Court did not adopt that definition. *Id.* It has long been held that it is impossible to establish any unbending rule or determine specific distance that will characterize an act as a traveling.[7] This Court has specifically held that there is "no hard and fast rule" and that the "traveler defense" is generally a question of fact to be considered by the jury. *Id.* at 147.

 While Texas courts have never explicitly defined traveling, they generally consider the distance, time, and mode of

---

7. *See Kemp v. State*, 116 Tex.Crim. 90, 31 S.W.2d 652, 653 (1930); *George v. State*, 90 Tex.Crim. 179, 234 S.W. 87, 88 (1921); *Bain v. State*, 38 Tex.Crim. 635, 44 S.W. 518, 518 (1898).

travel. *Soderman v. State*, 915 S.W.2d 605, 609 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd, untimely filed). Whether one is a traveler is a fact-driven determination that is not dependent on any one particular situation. *Birch v. State*, 948 S.W.2d 880, 883 (Tex.App.-San Antonio 1997, no pet.); *Matocha*, 890 S.W.2d at 146. Maria Sanchez and the defendant both testified defendant was planning to travel from Longview to his uncle's house in Liberty City. We take judicial notice that Longview is in Gregg County and that Liberty City is in Gregg County less than fifteen miles from Longview. Tex.R. Evid. 201(b). While the Texas Court of Criminal Appeals has noted the journey must generally be overnight,[8] this Court noted in *Matocha* that *Vogt* did not restrict the defense to overnight stays. *Matocha*, 890 S.W.2d at 145. Under certain circumstances, such as traveling by a wagon or horse, Texas courts have held that distances as short as defendant's intended destination can be

traveling.[9] However, if the journey is so short there is no real journey, then one is not a traveler.[10] Defendant presented evidence he was traveling by automobile approximately fifteen miles. As a matter of law, defendant's short drive to his uncle's house was no real journey.

■ Further, the traveling exception does not apply if the defendant takes unnecessary deviations from the course of travel. A traveler "may not deviate from the usual and customary highway upon which he is traveling, to make side excursions for pleasure, business, etc., not connected with his journey."[11] Defendant had visited Maria Toribio's house and Leonore Badillo's house before he picked up Emma Sanchez and brought her to Jose Luis Sanchez's house. Defendant's visits to Jose Luis Sanchez's house, Maria Toribio's house, and Leonore Badillo's house were deviations for pleasure not merely incidental to his journey to his Uncle Javi-

8. *Vogt v. State*, 159 Tex.Crim. 211, 258 S.W.2d 795, 796 (1953).

9. *Bain*, 44 S.W. at 518 (journey of thirty-five miles including overnight stay was traveling); *Price v. State*, 34 Tex.Crim. 102, 29 S.W. 473, 473 (1895) (journey by wagon of twenty-five miles with overnight stay); *Smith v. State*, 42 Tex. 464, 465–66 (1875) (journey by wagon of seventeen miles); *Birch v. State*, 948 S.W.2d 880, 881 (Tex.App.-San Antonio 1997, no pet.) (entitled to jury instruction concerning journey of fifty-five miles).

10. *Wortham v. State*, 95 Tex.Crim. 135, 252 S.W. 1063, 1064 (1923) (thirty-five-mile journey was not traveling); *George*, 234 S.W. at 88 (two-hour drive in a car not traveling as a matter of law); *Williams v. State*, 74 Tex. Crim. 639, 169 S.W. 1154, 1154 (1914) (twenty-six-mile journey was not traveling); *Stanfield v. State*, 34 S.W. 116, 116 (1896) (journey of fifteen miles with return trip on the same day was not traveling); *Perez v. State*, 87 S.W.3d 648, 653 (Tex.App.-San Antonio 2002, no pet.) (not entitled to jury instruction for journey of less than ten miles, even though

the destination was in another county); *accord Moosani v. State*, 914 S.W.2d 569, 575 (Tex.Crim.App.1995) (Baird, J., dissenting).

11. *Tadlock v. State*, 124 Tex.Crim. 637, 64 S.W.2d 963, 964 (1933); *see Payne v. State*, 494 S.W.2d 898, 900 (Tex.Crim.App.1973) (not entitled to jury instruction when defendant loitered at a bar for two hours), *questioned by Birch*, 948 S.W.2d at 885; *Pecht v. State*, 82 Tex.Crim. 136, 199 S.W. 290, 291 (1917) (visiting multiple parties along the way); *Stilly v. State*, 27 Tex.App. 445, 11 S.W. 458 (1889) (not traveling while gambling after travel had been suspended for the night); *Ayesh v. State*, 734 S.W.2d 106, 108 (Tex.App.-Austin 1987, no pet.); *see also Cortemeglia v. State*, 505 S.W.2d 296, 297–98 (Tex.Crim.App. 1974); *Boyett v. State*, 167 Tex.Crim. 195, 319 S.W.2d 106, 107 (1958); *Cassi v. State*, 86 Tex.Crim. 369, 216 S.W. 1099, 1100 (1919); *Soderman v. State*, 915 S.W.2d 605, 609 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd, untimely filed). *But see Kemp v. State*, 116 Tex.Crim. 90, 31 S.W.2d 652, 653 (1930) (stopping at restaurant to eat was only incidental to travel).

er's house. Because of these unnecessary deviations, defendant lost his status as a traveler as a matter of law, if he was ever entitled to such a status.

 "When evidence … raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury." *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App.1993). The evidence may be either strong, weak, contradicted, unimpeached, or unbelievable. *Id.* However, when the evidence fails to raise a defensive issue, the trial court commits no error in refusing a requested instruction. *Id.* Based on consideration of the distance, time, and mode of travel of defendant's intended journey, defendant was not traveling as a matter of law. Further, defendant made unnecessary deviations, which would be sufficient to preclude him of any traveler status. Therefore, the evidence did not raise the issue of whether defendant was a traveler. The trial court did not err in refusing to charge the jury concerning the nonapplicability of Section 46.02 to a person who is traveling.

### Refusal to Allow Defendant to Introduce Testimony Concerning Alleged Coaching

 In his final point of error, defendant argues the trial court erred in refusing to allow him to call the court interpreter as a witness to possible coaching of one of the State's main witnesses by an unknown spectator. Defendant argues that the right to impeach a witness concerning whether he or she was visually signaled or coached is a vital part of a defendant's right to confront a witness and test the witness' credibility.

At one point during Marco Sanchez's testimony, Cotton, the court-appointed interpreter, approached the bench, without either of the counsel present, and informed the trial court an unknown spectator may have been coaching Marco Sanchez. At the conclusion of Marco Sanchez's testimony, the defense counsel requested to question Cotton concerning her observations. The trial court informed the defense counsel he could question her at a later point in the trial. The trial court stated he had been watching the spectators and did not believe anyone had been coaching the witness. Before the defense rested and outside the presence of the jury, defense made an offer of proof concerning Cotton's testimony. Cotton testified that an unknown spectator was "making some gestures, she was making some nods, she was mouthing things," but that she was not sure whether the spectator was trying to coach the witness because Cotton was involved in interpreting. At the conclusion of the examination of Cotton, the trial court stated that:

> The Court qualifies your bill by saying it observes the spectators at all times the witnesses are testifying because of prior experiences where that has happened. And this Court affirmatively states into the record that this Court did not observe any type of signals being given any witness during the trial of this case.

When the defense counsel requested to question Cotton in the presence of the jury, the trial court overruled the request.

The State contends courts have considerable discretion concerning what evidence is admissible for impeachment on collateral matter. The State argues that the trial court did not abuse its discretion in refusing to allow the court interpreter to be examined in the presence of the jury because the risk of undue prejudice outweighed any probative value of the evidence.

 Generally, impeachment on a collateral issue is not permissible. *Ramirez*

*v. State,* 802 S.W.2d 674, 675–76 (Tex. Crim.App.1990); *Bates v. State,* 587 S.W.2d 121, 141–43 (Tex.Crim.App.1979). A matter may be considered collateral unless it relates to proof of the offense or to some matter affecting the credibility of the witness. *See Ramirez,* 802 S.W.2d at 676. Because the evidence directly relates to the credibility of Marco Sanchez's testimony, we do not believe it is an inadmissible collateral matter.

The next step of our inquiry is whether the trial court abused its discretion under Rule 403 of the Rules of Evidence in excluding the evidence. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. The trial court's determination under Rule 403 should be reviewed for a clear abuse of discretion. *Mozon v. State,* 991 S.W.2d 841, 847 (Tex.Crim.App.1999). The trial court was in a position to observe the courtroom and stated it had observed the spectators in the court and had not seen any indication of coaching. "Trial judges enjoy exclusive prerogatives over the courtroom and the proceedings...." *Weidner v. Marlin,* 937 S.W.2d 601, 604 (Tex.App.-San Antonio 1996, no pet.); *see Gonzales v. State,* 2 S.W.3d 600, 607 (Tex. App.-Texarkana 1999, pet. ref'd). The decision that the risk of undue prejudice or potential for misleading the jury outweighed the probative value of the evidence is within the zone of reasonable disagreement. Therefore, we cannot say the exclusion of the testimony was a clear abuse of discretion.

### Conclusion

While it was error to conduct a pretrial hearing without defendant present, the er-

ror was harmless. Even if it was error not to appoint a separate interpreter to aid the defense, the error was clearly harmless. Failure to instruct the jury concerning the nonapplicability of the unlawfully carrying a firearm self-defense limitation was not error. Lastly, the trial court did not abuse its discretion in excluding the interpreter's testimony concerning possible coaching.

For the reasons stated, we affirm the trial court's judgment.