**AFFIRMED as MODIFIED and Opinion Filed July 11, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00100-CR**

**CHRISTOPHER ROMMELL MCKINNEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1975306-M**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Smith

A jury convicted appellant Christopher Rommell McKinney of murder and sentenced him to thirty years' confinement. In four issues, he challenges (1) the denial of a mistake-of-fact jury instruction, (2) the inclusion of language from Texas Penal Code section 9.31(b)(5), (3) the admission of certain autopsy photographs, and (4) the use of a videotaped police interview for improper impeachment. In a cross-point, the State requests modification of the judgment to correctly reflect appellant's "not guilty" plea and to add a deadly weapon affirmative finding. As modified, we affirm the trial court's judgment.

**Background**

This case involves a shooting that resulted in the death of Demondre Green on February 24, 2019. The jury heard conflicting versions of the altercation leading up to the shooting. The following facts were undisputed.

On February 23, 2019, Demondre picked up Marcus Green, his older brother, and drove a gray Ford Focus to Kung Fu Saloon in Uptown Dallas. They arrived around 10:45 p.m. and parked outside the Routh Street Flat condos.

Brandon Fuller and appellant met up the same evening. Appellant drove his black Infiniti to Club Level, another bar in Uptown. Appellant parked directly behind Demondre's Focus. Brandon described the parking as "tight," and the space between the two cars as "snug." They stayed at the club until closing time around 2 a.m. and then walked back to the Infiniti.

Demondre and Marcus also left Kung Fu Saloon near closing time and walked back to the Focus. Demondre arrived first and got in. From Marcus's vantage point, the Infiniti was parked very close behind the Focus. The subsequent interactions between Marcus, Demondre, Brandon, and appellant were in dispute.

### Marcus's Testimony

Demondre commented to Marcus that he might hit the Infiniti because of how close it parked to them. Marcus repeated, "Hit the car?" Marcus then heard appellant yell, "He bet not hit my car." Marcus turned around and said to appellant, "like, why did you park so close. What you mean, not hit your car, like you are in the wrong."

–2–

Marcus heard appellant ask one of his friends to let him in the car to get a weapon. Appellant then opened the front passenger's side door, grabbed a handgun, put it in his front waistband, and walked to the front of the car. Marcus saw the gun handle sticking out of appellant's pants. Marcus then yelled and asked Demondre if he had his A.R. 15. Marcus asked a couple times about the A.R., but Demondre did not answer. Marcus knew that meant Demondre did not have it. Marcus denied saying, "Get the A.R."

While Marcus directed Demondre out of the parking spot, appellant stood in the middle of the street about six to eight feet from the Focus. Marcus said appellant stared at them "like he was mad at the world." They were in the car getting ready to pull out, and Marcus said, "What are you mad at, this is your fault. You blocked us in this parking spot. Like what is your problem." Then appellant pulled his gun and started shooting.

### Brandon's Testimony

As Brandon and appellant walked to the Infiniti, Brandon heard Marcus say, "Hit that whoe," which he took to mean Demondre should hit the Infiniti if he needed to get out. Brandon said they were getting ready to leave, so appellant did not need to hit the Infiniti. Appellant said, "Nah, hit the whoe if he want to." Brandon then heard someone inside the car say, "Go get the A.R." He emphasized he heard, "Get the A.R.," not "Do you have the A.R.?" Appellant then retrieved a gun from the glovebox and put it in the front of his pants. Brandon was a few feet behind "keeping

–3–

an eye on everything." Brandon kept telling appellant to "chill," but he was not listening.

Brandon and appellant walked to the middle of the street. Brandon believed Demondre saw appellant's gun and then said something like, "You got the whoe, shoot the whoe." He described it as Demondre challenging appellant. Appellant was approximately two feet away from the driver's side when he began shooting.

### Appellant's Testimony

Appellant remembered parking close to a Ford Focus, "but it wasn't just real close." He easily slipped in and parked behind it. When they returned to the parked Infiniti, he heard a guy say, "Hit that whoe, hit that whoe."

Brandon commented that they better not hit the car, but appellant was not concerned because he had insurance. Appellant said, "They can hit that whoe," and then Demondre said, "Oh, you think this is a game, huh." Appellant heard Demondre say several times, "Get the A.R." Appellant was scared and told Demondre it was not that serious.

Appellant then walked to his car, opened the glove box, and retrieved his insurance card. A pistol fell out, so he grabbed it and put it in his waistband because he wanted to be safe.

Appellant walked towards Demondre to exchange insurance, but Demondre refused the card and said he did not want to talk about it because he was "about action." Demondre tapped Marcus "like a guy code," and Marcus reached behind

–4–

the driver's seat. Appellant saw Demondre with a handgun, so he quickly pulled his gun from his waistband, closed his eyes, and started shooting. Appellant described it as a "battlefield" or an "old Western movie." He never saw an A.R., and a weapon was never found in the Focus.

***Post-Shooting Events***

After the shooting, witnesses described appellant as "calm," like in "zombie mode," and not like someone scared or in danger. Appellant then drove slowly away with no headlights.

Police arrived shortly thereafter. Demondre died at the scene from gunshot wounds to his head and chest area. Dr. Janis Townsend-Parchman, the medical examiner, described to the jury the gunshot wounds and the bullets' trajectory and distance. The trajectory of the bullets was likely a slightly downward angle, and the closest was shot from two to three feet away from Demondre.

Two days after the incident, Brandon identified appellant in a police lineup. Shortly thereafter, appellant was taken into custody. He was voluntarily interviewed by Detective Grubbs.

At trial, appellant admitted he intentionally shot and killed Demondre, but it was in self-defense. He testified it was necessary to use his gun only after he allegedly saw Demondre pull his gun. The jury rejected he acted in self-defense and sentenced him to thirty years' confinement. This appeal followed.

**Mistake-of-Fact Instruction**

In his first issue, appellant argues the trial court erred by denying his request for a mistake-of-fact instruction. The State responds the trial court properly denied the requested instruction because any mistake of fact would not have negated the culpable mental state for the charged offense.

During the charge conference, appellant requested a mistake-of-fact instruction because he reasonably believed Demondre or Marcus reached for a gun or had a gun. The State responded what appellant called a mistake of fact was really a dispute of facts. The trial court overruled appellant's requested instruction.

A trial court is obligated to prepare a jury charge that accurately states the law applicable to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). It is a defense that the defendant "through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE ANN. § 8.02(a). "Kind of culpability" refers to the mental state required for criminal responsibility. *Celis v. State*, 416 S.W.3d 419, 430–31 (Tex. Crim. App. 2013). Thus, a mistake-of-fact defense turns on the mistaken belief of the defendant, not others, and considers the conduct of others only to the extent that it contributes to the defendant's belief. *Flores v. State*, 573 S.W.3d 864, 868 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd).

An instruction on mistake of fact is limited to the culpable mental state required for the offense, and therefore, can be difficult to obtain. *See Celis*, 416

S.W.3d at 430. Here, the indictment alleged two alternate theories of murder: (1) appellant intentionally and knowingly caused Demondre's death by shooting him with a firearm; and (2) intentionally and knowingly committed an act clearly dangerous to human life by shooting Demondre with a firearm causing his death. *See* TEX. PENAL CODE ANN. § 19.02(b). Appellant admitted he intentionally shot Demondre. Appellant's alleged mistaken belief, even if accepted as true, would not negate the culpable mental state for the charged offense.

This case is distinguishable from *Granger v. State*, 3 S.W.3d 36 (Tex. Crim. App. 1999), in which the court of criminal appeals concluded the defendant was entitled to a mistake-of-fact instruction. In that case, the defendant fired several gunshots into what he thought was an empty car. *Id*. at 41. The court concluded that accepting defendant's statement as true, he could not have "intentionally or knowingly" caused the death of the victim if he did not know the victim was in the car. *Id*. Therefore, the defendant was entitled to a mistake-of-fact instruction because if his mistake was believed, the culpable mental state for murder would be negated. *Id*. Here, appellant did not shoot into a mistaken empty car, but instead admittedly and intentionally shot Demondre who he knew was in the car.

This Court's recent opinion in *Guyger v. State*, No. 05-19-01236-CR, 2021 WL 5356043, at *5 (Tex. App.—Dallas Nov. 17, 2021, pet. ref'd) (not designated for publication) further supports our conclusion. In *Guyger*, the appellant argued any intent to commit murder was negated by her mistaken belief that she entered her

–7–

own apartment, and she believed the victim was an intruder. *Id.* However, we concluded the mistaken facts upon which she relied were relevant only to whether she was justified in shooting the victim and did not negate her intent to kill the victim. *Id.* Like the facts here, appellant's mistake of fact was relevant to whether his shooting was justified. His right to act in self-defense, if applicable, did not negate his intent to kill; self-defense instead would have justified the shooting. *See id.* The jury, however, concluded the shooting was not justified, and he has not challenged the sufficiency of the evidence supporting his conviction.

The evidence, when viewed in the light most favorable to appellant, does not establish a mistake of fact. The trial court properly denied a mistake-of-fact instruction. Appellant's first issue is overruled.

### Texas Penal Code § 9.31(b)(5) Instruction

In his second issue, appellant argues he was egregiously harmed by the inclusion of language in the jury charge from penal code section 9.31(b)(5). *See* TEX. PENAL CODE ANN. § 9.31(b)(5).

Section 9.31(b)(5) states that the use of force is not justified if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon in violation

of section 46.02[1] or possessing or transporting a weapon in violation of section 46.05. *Id.* The jury was instructed, in relevant part, as follows:

> The use of force against another is not justified . . . if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was (a) intentionally, knowingly, or recklessly carr[ying] on or about his person a handgun; and (b) is not (1) on the person's own premises under the person's control; or (2) inside of or directly enroute to a motor vehicle or watercraft that is owned by the person or under the person's control.

If, as here, the defendant did not object to the alleged error at trial, we reverse only if there is error, and the error is "so egregious and created such harm that the defendant has not had a fair and impartial trial." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to giving the instruction to determine whether the limiting instruction was warranted. *See Fink v. State*, 97 S.W.3d 739, 743 (Tex. App.—Austin 2003, pet. ref'd).

A charge limiting a right to self-defense under section 9.31(b)(5) is properly given when (1) self-defense is an issue; (2) there are facts in evidence showing that the defendant sought an explanation from or discussion with the victim concerning the defendant's differences with the victim; and (3) the defendant was unlawfully carrying a weapon. *See Lee v. State*, 259 S.W.3d 785, 789 (Tex. App.—Houston

---

[1] At the time of the offense, section 46.02 stated a "person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun . . . if the person is not on the person's own premises under the person's control; or inside of or directly enroute to a motor vehicle or watercraft that is owned by the person or under the person's control." *See* Act of May 25, 2011, 82d Leg., R.S., ch. 679, § 1, sec.46.02, 2011 Tex. Gen Laws 1640 (amended 2021) (current version at TEX. PENAL CODE ANN. § 46.02).

[1st Dist.] 2007, pet. ref'd). If evidence raising the issue exists, an instruction should be submitted. *Id*.

It is undisputed that self-defense was an issue in the case. Appellant admits there was evidence that appellant approached Demondre's car to discuss damage to his Infiniti, but he argues there was no evidence that he armed himself and engaged in a discussion with the intent of shooting Demondre "because of the vehicle damage." He claims he did not shoot into the vehicle because of a disagreement over insurance or the extent of damage to the Infiniti, but only because he believed Demondre was in possession of an A.R.

The term "differences" is not defined in the statute. The plain meaning of "differences" is a "disagreement of opinion" or "an instance of disagreement or point upon which there is disagreement." *See Hernandez v. State*, 309 S.W.3d 661, 664 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing WEBSTER'S THIRD INT'L DICTIONARY 629 (1993)).

Appellant encourages a narrow application of "differences" within the context of these facts. We reject his invitation. The record indicates a heated disagreement about parking occurred prior to the shooting; therefore, there is evidence showing that appellant sought an explanation from or discussion with Demondre concerning their differences. *See* TEX. PENAL CODE ANN. § 9.31(b)(5); *Lee*, 259 S.W.3d at 789.

Finally, it was undisputed that appellant was not on his own premises or directly enroute to this car when he shot Demondre. Moreover, appellant admitted

–10–

that he did not have a license to carry a handgun and was unlawfully carrying it on the night in question. The trial court did not err by submitting the 9.31(b)(5) limiting instruction to the jury. *Lee*, 259 S.W.3d at 789.

In reaching this conclusion, we reject appellant's contention that the limiting instruction was misleading because it did not also include an instruction on the traveler's defense. *See* TEX. PENAL CODE ANN. § 46.15(b)(2) (stating that section 46.02 does not apply to a person "traveling"). Even though the traveling exception has been in existence in Texas since the enactment of carrying handguns, what constitutes "traveling" remains a source of discussion. *See Sumrall v. State*, No. 12-20-00215-CR, 2021 WL 4057247, *7 (Tex. App.—Tyler Aug. 25, 2021, no pet.) (mem. op., not designated for publication); *see also Sanchez v. State*, 122 S.W.3d 347, 355 (Tex. App.—Texarkana 2003, pet. ref'd). Courts have generally considered the distance, time, and mode of travel when determining whether the traveler's exception applies. *Sanchez*, 122 S.W.3d at 355–56. However, "if the journey is so short there is no real journey, then one is not a traveler." *Id.* (concluding defendant who drove approximately fifteen miles was not traveling for purposes of statutory exception as matter of law). *But see Ayesh v. State*, 734 S.W.2d 106, 108 (Tex. App.—Austin 1987, no pet.) (discussing cases concluding exception applied when person journeyed more than thirty-five to forty miles and trip was typically overnight).

Appellant contends that because there is no "bright-line rule for determining whether one is a traveler," it must be submitted to the jury and not decided as a matter of law. However, other appellate courts have determined, as a matter of law, that the exception does not apply despite the lack of any bright-line rule. *See, e.g.*, *Sanchez*, 122 S.W.3d at 356; *Perez v. State*, 87 S.W.3d 648, 653 (Tex. App.—San Antonio 2002, no pet.).

Here, appellant did not specify where or when he believed he traveled on the night in question. Rather, the evidence showed he lived near downtown Dallas and drove to Club Level in Uptown Dallas. He did not present any evidence of the actual distance between the two locations. However, they were close enough that he drove back and forth between his home and the club twice because Brandon forgot his I.D. and then because appellant's attire violated the club's dress code. Thus, appellant's destination was not "some distance" from his home. *Ayesh*, 734 S.W.2d at 108; *see also Perez*, 87 S.W.3d at 653 (concluding traveler's exception did not apply when defendant's destination was a restaurant less than ten miles from his home). The court of criminal appeals has instructed that we do not apply the ordinary meaning of "traveling" as simply going from place to place as "almost every person who goes from place to place may be considered a traveler." *See Bain v. State*, 44 S.W. 518, 518 (Tex. Crim. App. 1898); *Gomez v. State*, No. 03-07-00050-CR, 2008 WL 1827428, at *12 (Tex. App.—Austin Apr. 24, 2008, no pet.) (mem. op., not designated for publication) (citing *Bain*). Considering the evidence in this case,

appellant was not on a "real journey" entitling him to a traveler's exception instruction. Accordingly, its absence from the charge was not error.

Finally, appellant argues the section 9.31(b)(5) limiting instruction "imposed an unconstitutional limitation on [his] right to protect himself and instead automatically defeated his right of self-defense." We construe appellant's argument as challenging the constitutionality of the statute. To preserve an issue on appeal, there must be a timely objection that specifically states the legal basis for the objection. *See* TEX. R. APP. P. 33.1(a). A constitutional challenge based on a statute's application to a defendant cannot be raised for the first time on appeal. *See Trejo v. State*, No. 13-16-00432-CR, 2018 WL 5534107, at *3 (Tex. App.—Corpus Christi–Edinburg Oct. 25, 2018, pet. ref'd) (mem. op., not designated for publication). Further, a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). Because appellant did not raise his complaint to the trial court, he is barred from raising it for the first time on appeal. TEX. R. APP. P. 33.1; *Trejo*, 2018 WL 5534107, at *3; *Karenev*, 281 S.W.3d at 434. We overrule appellant's second issue.

**Admission of Photographs**

In his third issue, appellant argues the trial court abused its discretion by admitting multiple photographs depicting Demondre's wounds and postmortem appearance because the probative value was substantially outweighed by the danger

–13–

of unfair prejudice. In support of his argument, he argues the cause of death was not in dispute, and the photographs served no purpose other than to stir the jury's emotions and encourage it to reject appellant's self-defense. The State responds the trial court properly admitted the photographs because they aided the medical examiner's testimony.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. TEX. R. EVID. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. TEX. R. EVID. 403. The balance between probative value and the potential for prejudice "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We review a trial court's decision to admit photographs into evidence for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007); *Taylor v. State*, No. 05-17-01058-CR, 2018 WL 5306991, at *9 (Tex. App.—Dallas Oct. 26, 2018, no pet.) (mem. op., not designated for publication).

A proper rule 403 analysis includes, but is not limited to, four factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the

–14–

proponent's need for the evidence. *See State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Rule 403 does not require exclusion of all evidence because it is prejudicial, only evidence that is unfairly prejudicial. *See Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010).

Generally, photographs are admissible if verbal testimony about the matters depicted in the photographs would be admissible, and their probative value is not substantially outweighed by rule 403 factors. *See Gallo*, 239 S.W.3d at 762. A trial court does not abuse its discretion simply by admitting into evidence a gruesome photograph. *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) (en banc); *see also Shavers v. State*, 881 S.W.2d 67, 77 (Tex. App.—Dallas 1994, no pet.) ("The fact that the scene depicted in the photograph is gory and gruesome does not make the photograph more prejudicial than probative when the crime scene is gory and gruesome.").

The State moved to admit exhibits 33 through 50, which were autopsy photographs. Appellant objected to the photographs because they were more prejudicial than probative. The court reviewed the photographs and overruled appellant's objections.

After reviewing the photographs, we cannot conclude the trial court acted outside the zone of reasonable disagreement in admitting them. Dr. Townsend-Parchman used the autopsy photographs to describe Demondre's injuries to the jury. Any alleged gruesomeness in the photographs can be attributed to the subject matter

–15–

depicted by the photographs and is no more gruesome than the disturbing reality of the crime itself. *See Johnson v. State*, No. 05-15-00640-CR, 2016 WL 6473052, at *8 (Tex. App.—Dallas Nov. 1, 2016, no pet.) (mem. op., not designated for publication). Further, a trial court does not err merely because it admits gruesome photographs into evidence. *Guida v. State*, No. 05-14-01626-CR, 2016 WL 2905147, at *7 (Tex. App.—Dallas May 13, 2016, pet. ref'd) (mem. op., not designated for publication).

Dr. Townsend-Parchman used the photographs to explain the likely trajectory of the bullets and distance from which they were fired. Although appellant argues the trajectory of the bullets or general ballistics was not disputed because it was undisputed appellant shot Demondre, we cannot say the trial court acted outside the zone of reasonable disagreement by allowing the pictures into evidence for the jury to consider in determining whether appellant acted in self-defense. *See, e.g.*, *Johnson*, 2016 WL 6473052, at *8 (concluding autopsy photographs gave jury a means of gauging whether defendant's story was believable or reasonable); *see also Hall v. State*, 137 S.W.3d 847, 855 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (concluding autopsy photographs admissible to demonstrate proximity of wounds and the trajectories and paths of the bullets despite defendant's conditional stipulation he shot victim in self-defense).

Further, a photograph is generally admissible if verbal testimony as to matters depicted in the photograph is also admissible. *See Williams v. State*, 958 S.W.2d

–16–

186, 195 (Tex. Crim. App. 1997). In other words, if the verbal testimony is relevant, photographs of the same are also relevant. *Id*.; *McLemore v. State*, No. 05-15-00160-CR, 2015 WL 9591398, at *3 (Tex. App.—Dallas Dec. 31, 2015, no pet.) (mem. op., not designated for publication). Dr. Townsend-Parchman's testimony about Demondre's injuries was relevant, admissible, and did not draw any objections. Under these circumstances, we conclude the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. The trial court's decision to admit the photographs was within the zone of reasonable disagreement and, therefore, not an abuse of discretion. We overrule appellant's third issue.

### Police Interview

In his fourth issue, appellant argues the trial court abused its discretion by allowing the State to reopen its case after appellant testified and admitting into evidence his police interview with Detective Grubbs because it was improper "double-down impeachment" and not rebuttal evidence within article 36.01(a)(7) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(7) (noting order of trial proceedings). The State responds the interview was not barred because it was admitted against appellant as extrinsic evidence of his prior inconsistent statements. *See* TEX. RS. EVID. 613(a)(4), (5) (stating extrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement,

but subdivision (a) does not apply to an opposing party's statement under rule 801(e)(2)).

The relevant facts are as follows. During appellant's direct examination, he claimed he heard Demondre say get the A.R., and he saw Demondre with a gun. On cross-examination, the State asked appellant about his interview with Detective Grubbs. Defense counsel objected, and the trial court held a hearing outside the jury's presence. During that hearing, appellant testified that he told Detective Grubbs he heard someone make a threat about an A.R. and saw Demondre with a gun. The State then played his videotaped interview. After watching his interview, appellant admitted he did not tell Detective Grubbs anything about an A.R., and when Detective Grubbs asked if he saw a gun, appellant answered no. Back in the presence of the jury, appellant admitted he did not mention in his interview anything about an A.R. or a gun.

After the defense rested, the State reopened its case and called Detective Grubbs as a rebuttal witness. The State then introduced appellant's police interview into evidence, and appellant objected as improper impeachment. The trial court overruled the objection. The State played the videotaped interview for the jury, and then the State continued questioning Detective Grubbs without any further objection. Detective Grubbs testified appellant said he did not see a gun. He also testified appellant never mentioned during the interview anyone threatening him or having an A.R.

We agree with appellant that the videotaped interview is not proper impeachment evidence of a prior inconsistent statement under the facts of this case. If a witness denies making a prior statement, then extrinsic evidence of the prior inconsistent statement may be offered. *See* TEX. R. EVID. 613(a)(4) ("[e]xtrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement"); *see also Maldonado v. State*, No. 05-16-01457-CR, 2018 WL 833372, at *3 (Tex. App.—Dallas Feb. 13, 2018, no pet.) (mem. op., not designated for publication). Here, appellant unequivocally admitted before the jury to not telling Detective Grubbs anything about weapons. Thus, the trial court abused its discretion by admitting this extrinsic evidence.

A trial court's error in the admission of evidence is reviewed for non-constitutional error. *Delgado v. State*, 635 S.W.3d 630, 754 (Tex. App.—Dallas 2021, pet. ref'd). Improper admission of evidence does not constitute reversible error if the same or similar facts are proved by other properly admitted evidence. *Hayes v. State*, No. 05-16-00740-CR, 2017 WL 5663612, at *8 (Tex. App.—Dallas Nov. 27, 2017, pet. ref'd) (mem. op., not designated for publication). In other words, "error in the admission of evidence may be rendered harmless when substantially the same evidence is admitted elsewhere without objection." *Id*. (quoting *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (en banc)). Because Detective Grubb's testimony, which was substantially the same as the videotaped interview,

–19–

came in without objection, the admission of the videotaped interview was harmless. Appellant's fourth issue is overruled.

## Modification of Judgment

In a cross-point, the State requests modification of the judgment to reflect that appellant pleaded "Not Guilty" and to reflect the jury's affirmative deadly weapon finding.

When the record provides the necessary information to correct inaccuracies in the trial court's judgment, we have the authority to reform the judgment to speak the truth. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (courts of appeals have authority to modify a judgment); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).

The record confirms that appellant pleaded not guilty after the trial court read the indictment. Because the record unambiguously establishes that appellant pleaded not guilty to the charged offense, we replace "Guilty" with "Not Guilty" in the "Plea to the Offense:" portion of the judgment. *See* TEX. R. APP. P. 43.2(b); *Bigley*, 865 S.W.2d at 27–28; *Asberry*, 813 S.W.2d at 529–30.

We likewise conclude that the record supports the jury's affirmative deadly weapon finding. The indictment alleged two alternate theories of murder: (1) appellant intentionally and knowingly caused the death of Demondre by shooting him with a firearm, a deadly weapon; and (2) appellant intended to cause serious bodily injury to Demondre and committed an act clearly dangerous to human life by

–20–

shooting him with a firearm, a deadly weapon, causing his death. The jury found appellant guilty of the offense of murder "as charged in the indictment." Because the jury implicitly found that appellant used a deadly weapon in committing the offense when it found appellant guilty of the offense of murder as charged in the indictment, we modify the judgment to delete "N/A" and replace with "YES, A FIREARM" in the space designated for "Findings on Deadly Weapon:." *See, e.g., Stiggers v. State*, No. 05-97-01373-CR, 2000 WL 150851, at *2 (Tex. App.—Dallas Feb. 14, 2000, no pet.) (not designated for publication). We sustain the State's cross-point.

### Conclusion

As modified, the judgment of the trial court is affirmed.

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
200100F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CHRISTOPHER ROMMELL MCKINNEY, Appellant

No. 05-20-00100-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1975306-M.
Opinion delivered by Justice Smith. Justices Schenck and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We DELETE "N/A" and REPLACE with "YES, A FIREARM" for "Findings on Deadly Weapon."

We DELETE "GUILTY" and REPLACE with "NOT GUILTY" for "Plea to the Offense."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered July 11, 2022